**In re: SEEK WILDERNESS, LTD. a/k/a Iverson Snow Shoe Company, Debtor.**

**Colleen M. Olson, Chapter 7 Trustee, Plaintiff,**

v.

**Donald W. Bays, Defendant.**

**Bankruptcy No. HM 01–90650. Adversary No. 06–99009.**

United States Bankruptcy Court, W.D. Michigan.

May 15, 2007.

Donald W. Bays, Esq., Marquette, for the Debtor.

A. Brooks Darling, Esq., Traverse City, for Colleen Olson, Chapter 7 Trustee.

## OPINION

JEFFREY R. HUGHES, Bankruptcy Judge.

Colleen Olson ("Trustee") commenced this adversary proceeding to compel Donald M. Bays to "disgorge" a retainer paid to him in connection with: (a) his pre-petition representation of Seek Wilderness; and (b) his subsequent representation of the Chapter 11 bankruptcy estate created after Seek Wilderness filed its petition for relief. Trustee is requesting that she be granted summary judgment. Both Trustee and Mr. Bays have filed briefs in support of their respective positions.

I heard Trustee's motion on August 29, 2006. Counsel for the United States Trustee also appeared at the hearing and offered arguments largely supporting the position taken by Trustee. I then took the matter under advisement.[1]

### STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue of fact and the moving party is entitled to judgment as a matter of law. FED.R.BANKR.P. 7056(a). The court, in considering a motion for summary judgment, is to focus only upon material facts; that is, the court is to consider only those facts that are important vis-a-vis the applicable substantive law. Moreover, in determining whether there is a genuine dispute between the parties, the court is to draw all inferences from the record before it in the light most favorable to the non-moving party. However, if the pertinent record would not lead a rational trier of fact to find for the non-moving party even under such favorable circumstances, then summary judgment should be granted.

---

1. On August 31, 2006, I rendered a bench opinion regarding the Chapter 7 Trustee's motion. The transcript of that bench opinion is on file as Docket Entry No. 133. This written opinion supplements that bench opinion.

## DISCUSSION

The facts in this matter are largely undisputed. On October 25, 2005, Mr. Bays filed his first and only application for approval of fees incurred in connection with both his representation of Seek Wilderness and his representation of the ensuing Chapter 11 bankruptcy estate. His application indicates that he began providing pre-petition legal services to Seek Wilderness commencing on August 15, 2001, and that he continued to provide such services until Seek Wilderness filed its Chapter 11 petition on October 9, 2001. The amount of his pre-petition fees is $4,800. Mr. Bays does not seek approval of any pre-petition expenses.

The October 9, 2001 commencement of the Chapter 11 proceeding caused a bankruptcy estate to be created and all of Seek Wilderness's assets to be transferred to that estate. 11 U.S.C. § 541.[2] Seek Wilderness, as debtor-in-possession, immediately retained Mr. Bays to represent the Chapter 11 estate in the bankruptcy proceeding. Mr. Bays then earned the balance of his requested fees ($4,320), during his post-petition representation of the Chapter 11 estate. The $80.27 Mr. Bays requests for expenses was also incurred during this time frame.

Seek Wilderness paid Mr. Bays a $7,500 retainer approximately one month before it filed its petition for Chapter 11 relief. Mr. Bays apparently deposited the retainer in his IOLTA trust account.[3] It further appears from Mr. Bays' application that he actually applied the retainer against the fees claimed at about the same time as he generated the October 21, 2005 invoice supporting his fee application. As a result, Mr. Bays' fee application seeks actual reimbursement for only $1,700.27, that being the difference between the gross amount of $9,200.27 claimed by Mr. Bays for fees and expenses and the $7,500 Seek Wilderness paid as a retainer pre-petition. Mr. Bays asks that the $1,700.27 be allowed as a Chapter 11 administrative expense pursuant to Section 503(b)(1).

Trustee does not contest the reasonableness of any of the fees claimed or Mr. Bays' entitlement to an administrative priority for the services he rendered to the Chapter 11 estate post-petition. However, Trustee opposes Mr. Bays' request that he receive any reimbursement from the bankruptcy estate for the remaining balance owed to Mr. Bays. Moreover, Trustee asserts that Mr. Bays must disgorge a portion of what he had previously paid himself from the retainer so as to equalize Mr. Bays' distribution as a Chapter 11

**2.** The Bankruptcy Code is contained in 11 U.S.C. § 101, *et seq.* Debtor's petition predates the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23. However, apart from some changes in enumeration, the provisions of the Bankruptcy Code relevant to the instant case are not affected by those amendments. Therefore, for ease of reference, all citations in this opinion to the Bankruptcy Code will be to the Bankruptcy Code as amended by BAPCPA unless otherwise indicated. In addition, all references to "Section ____" will be to the relevant sections of the Bankruptcy Code unless otherwise indicated.

**3.** An attorney is required under Michigan's Rules of Professional Conduct to maintain a separate account for the deposit of funds held by the attorney on a client's behalf. MRPC 1.15(d). An attorney is also required to deposit in that account all fees and expenses that have been paid in advance and the attorney is permitted to withdraw the funds from that account only as the fees have been earned and the expenses have been incurred. MRPC 1.15(g). An IOLTA trust account (Interest on Lawyers Trust Account) is a special interest bearing account that law firms often use as the separate account for retainers and other client funds.

administrative claimant with what other unpaid Chapter 11 administrative claimants will be paid.

The parties agree that there were various Chapter 11 administrative claimants who remained unpaid when the case converted to a Chapter 7 and that there is not enough in the bankruptcy estate to now pay these residual Chapter 11 administrative claims in full. The Chapter 7 Trustee in fact contends that the unpaid Chapter 11 administrative claims at this time total $71,174.79 and that there is, at best, only $4,509.15 in her accounts to pay them. I say "at best" because the Chapter 7 Trustee presumably continues to accrue Chapter 7 administrative expenses which must first be paid from the $4,509.15 before any distribution can be made to these Chapter 11 administrative claimants. 11 U.S.C. § 726(b).

Trustee maintains that Mr. Bays must share the same lot as these unpaid administrative claimants by returning to the bankruptcy estate a significant portion of the $7,500 retainer he received from Seek Wilderness more than five years ago. Specifically, Trustee argues that Mr. Bays may keep only as much of the retainer as would be equal to what Mr. Bays would have received had his $9,200.27 claim been added to the $71,174.76 of other unpaid Chapter 11 administrative expenses and had Mr. Bays then received his pro rata share of whatever Trustee had in her accounts for Chapter 11 administrative expenses after bolstering that account by the $7,500 retainer Mr. Bays had received.

Fortunately, Trustee has not challenged me to formulate the algorithm necessary to ascertain the exact amount of the retainer she believes must be returned. Rather, Trustee at this juncture is only asking that I determine Mr. Bays' "liability" under her theory. I interpret this to mean that Trustee, with Mr. Bays' apparent acquiescence, wants me to simply declare at this time the parameters under which Mr. Bays' potential disgorgement is to be calculated so that she can later make the exact determination whenever the need ultimately arises. I proceed, therefore, on that basis.

■ There is no question that the bankruptcy estate has an interest in the prepetition retainer paid by debtor to Mr. Bays. In *In Re Downs*, 103 F.3d 472 (6th Cir.1996), the Sixth Circuit described this interest as an equitable interest held by the attorney in trust. *Id.* at 478. However, I believe that "security interest" or "deposit" better describes the legal character of the amount paid by Seek Wilderness to Mr. Bays. In other words, Seek Wilderness gave Mr. Bays $7,500 on September 15, 2001 to secure payment of whatever fees Mr. Bays had already incurred as of that date and to also secure payment for future services to be rendered by Mr. Bays.[4]

It cannot be said then that the retainer Seek Wilderness had paid Mr. Bays prepetition simply transferred into the bankruptcy estate. Rather, the retainer was subject to whatever services Mr. Bays had rendered pre-petition on Seek Wilderness' behalf for which he had not yet been reimbursed. Again, Mr. Bays' October 25, 2005 application indicates that that amount is $4,800.

■ Both parties seem to believe that Mr. Bays' security interest in the retainer may be ignored. I disagree. Assume, for example, that Seek Wilderness had instead placed a deposit with a contractor for repairs to be made and that the contractor

---

**4.** True, the retainer was deposited in Mr. Bays' IOLTA trust account. However, its deposit in that account would appear to be more an accommodation to Mr. Bays' professional responsibilities than an actual creation of a trust arrangement between Mr. Bays and Seek Wilderness.

had only partially completed the repairs at the time debtor filed its petition. Is there any question as to the contractor's right to still apply the deposit against whatever services the contractor had performed pre-petition? It follows then that Mr. Bays, too, should be able to apply the pre-petition retainer paid him against whatever services he performed for Seek Wilderness pre-petition.

Trustee's current cause of action turns only upon the Sixth Circuit's determination that Section 726(b) requires Chapter 11 professionals to disgorge fees in the event there remain unpaid Chapter 11 administrative claimants at the close of a Chapter 7 case. *Specker Motor Sales v. Eisen,* 393 F.3d 659 (6th Cir.2004). Disgorgement, though, was premised in *Specker Motor* upon the notion that equally situated administrative claimants should share equally.

> [I]nterim compensation is payment for professional services authorized by § 330(a), and § 330(a) fees are administrative claims. [The appellant's] claim, like other approved administrative claims on the estate, at all times remained subject to the statutory *pro rata* distribution scheme in § 726(b).

*Id.* at 663.

However, the $4,800 due Mr. Bays in this case for pre-petition services rendered on behalf of Seek Wilderness is not an administrative claim. Granted, attorneys who represent individual debtors in a Chapter 13 or a Chapter 12 proceeding do have an administrative claim against the estate for their pre-petition bankruptcy services pursuant to Sections 330(a)(4)(B) and 503(b)(2). However, an attorney who represents a Chapter 11 debtor pre-petition, as is the case here, is not entitled to administrative priority for any pre-petition fees earned that remain unpaid as of the commencement of the Chapter 11 case. Indeed, the fact that there are pre-petition fees still owing would disqualify that attorney from continuing to represent his client as the debtor-in-possession of the ensuing bankruptcy estate. 11 U.S.C. §§ 101(14) and 327(a); *see also, In re Watervliet Paper Co., Inc.,* 96 B.R. 768 (Bankr. W.D.Mich.1989).

Therefore, the underlying rationale of *Specker Motor* is inapplicable with respect to the bankruptcy estate's administration of Mr. Bays' pre-petition fees. Indeed, Mr. Bays' claim for his pre-petition fees would have been nothing more than an unsecured, non-priority claim, and, therefore, subordinate to the remaining unpaid Chapter 11 administrative claims, had Mr. Bays not received the retainer in question. However, Mr. Bays' pre-petition receipt of a retainer with respect to those services transformed his claim for those services from that of an unsecured creditor to that of a secured creditor. The tables, then, have been turned, for it is Mr. Bays who now stands in a superior position with respect to his pre-petition fees. The existence of unpaid Chapter 11 administrative claimants has no more effect upon Mr. Bays' right to enjoy the pre-petition retainer paid him than it would upon the hypothetical tradesman's right to enjoy the pre-petition he had received. Put simply, Mr. Bays' status as a secured claimant with respect to the retainer paid to him pre-petition by Seek Wilderness entitles him to recover in full the $4,800 in pre-petition fees he incurred before any distribution can be made to unsecured creditors of the bankruptcy estate, priority or otherwise.[5]

---

**5.** Of course, the ultimate enforceability of Mr. Bays' secured rights against the retainer with respect to his pre-petition fees is still subject to other provisions of the Bankruptcy Code and applicable non-bankruptcy law. In fact, Trustee did suggest at the August 29 hearing that my characterization of an attorney's re-

Consequently, Trustee's motion for summary judgment must be denied for this reason alone. Trustee cannot add the $4,800 of pre-petition fees accrued by Mr. Bays to the denominator or add the $4,800 of the retainer that secured these fees to the numerator of the fraction Trustee wishes to use for purposes of calculating the requested Section 726(b) disgorgement. Indeed, given that Trustee does not object to the reasonableness of the pre-petition fee as requested, the automatic stay should be modified to permit Mr. Bays to withdraw $4,800 from his IOLTA trust account in payment of the same. However, I am not ordering the automatic stay to be modified at this time. Mr. Bays must instead either get Trustee's consent to the modification or file a separate motion for relief from the stay in order to accomplish that purpose.

■ The next question is whether Mr. Bays should be compelled to return all or a portion of the pre-petition retainer that remained as security for future services to be rendered when Seek Wilderness filed its Chapter 11 petition on October 9, 2001. That remaining balance is $2,700. Mr. Bays and Trustee also apparently assume that Mr. Bays is automatically entitled to apply this retainer against his post-petition fees unless Trustee is able to compel disgorgement based upon the Section 726(b) cause of action sanctioned by *Specker Motor*. However, this assumption warrants critical examination as well.

There is no question that Mr. Bays represented Seek Wilderness itself when Seek Wilderness retained him in August of 2001 and that Mr. Bays continued to represent Seek Wilderness in September and the first part of October of that year. However, Mr. Bays' engagement changed in two ways when Seek Wilderness elected to file its Chapter 11 petition. First, a bankruptcy estate was immediately created and debtor became the effective trustee, or, in technical terms, the debtor-in-possession, of that bankruptcy estate. It was Seek Wilderness, as debtor-in-possession, which then hired Mr. Bays as the bankruptcy estate's counsel. Consequently, from October 9, 2001 on, Mr. Bays had a new client, the Chapter 11 bankruptcy estate, and it is this new client on whose behalf Mr. Bays incurred the remaining $4,320 in fees and all of the $80.27 in expenses set forth in Mr. Bays' October 25, 2005 application.

Second, Seek Wilderness's continuing interest in the $7,500 retainer it had paid Mr. Bays pre-petition transferred to the bankruptcy estate by operation of Section 541(a)(1). *See also, In re Downs,* 103 F.3d at 478. As just discussed, this change in ownership had no substantive effect upon Mr. Bays' ability to claim that retainer in payment of the $4,800 of pre-petition services he had rendered on behalf of Seek Wilderness. However, the change in ownership did preclude Mr. Bays from looking to the remaining $2,700 of the retainer for payment of any post-petition services Mr. Bays might have rendered on behalf of Seek Wilderness in its previous capacity as opposed to in its capacity as debtor-in-possession of the bankruptcy estate.

■ It does not follow necessarily that the remaining retainer that transferred into the bankruptcy estate upon the com-

---

tainer might be inaccurate; that a client might still be able to recover from the attorney the retainer paid even though the attorney had subsequently "earned" that retainer through the performance of the promised services. However, Trustee did not cite any support for this proposition and I would note that

the Michigan Rules of Professional Conduct impose no restriction upon a lawyer's withdrawing from his trust account funds paid to him by his client as a retainer other than the requirement that the withdrawals occur only as the fees are earned or the expenses are incurred. MRPC 1.15(g).

mencement of Seek Wilderness' Chapter 11 case would automatically secure whatever post-petition services Mr. Bays might render on the bankruptcy estate's behalf. Retention of professionals in the context of bankruptcy is a matter of contract just as it is in the non-bankruptcy context. Therefore, it stands to reason that an agreement between Mr. Bays and his new client, the bankruptcy estate, had to be reached sometime after the bankruptcy petition was filed regarding both the scope of Mr. Bays' retention and the manner in which he would be paid.

The application Seek Wilderness filed as debtor-in-possession to employ Mr. Bays as the Chapter 11 estate's attorney indicates that the bankruptcy estate did in fact intend the $2,700 remaining in the retainer to secure fees due Mr. Bays for his post-petition representation of the Chapter 11 estate. However, the November 8, 2001 order authorizing Mr. Bays' employment makes no mention of the retainer. It simply states that the debtor-in-possession was authorized to employ Mr. Bays at $150 an hour plus out-of-pocket expenses. The question, then, is whether Section 327(a), which is the Bankruptcy Code section that mandates court approval of the estate's employment of a professional, includes within its ambit the approval of retainers reached as part of that agreement. In other words, must the Court actually approve a retainer agreement as part of the Section 327(a) employment process before the retainer agreement can become enforceable against the bankruptcy estate?

■ Moreover, creation of a retainer constitutes a use of the bankruptcy estate's property. Consequently, the $2,700

retainer that remained as of the commencement of the bankruptcy case could not have simply "become" a new retainer to secure Mr. Bays' post-petition services on behalf of the estate. Rather, Mr. Bays' ability to look to this remaining amount for payment was conditioned upon Seek Wilderness, as debtor-in-possession, having had the authority under the Bankruptcy Code to use the bankruptcy estate's assets in that fashion regardless of whether Section 327(a) approval was required or not.[6]

The arrangement Mr. Bays reached with the bankruptcy estate with regard to his representation of it is in effect an agreement by Mr. Bays to provide services without immediate reimbursement in exchange for the bankruptcy estate's promise to secure the accrued fees at least in part with property of the estate. Consequently, it is also arguable that the arrangement the bankruptcy estate reached with Mr. Bays is a credit transaction within the meaning of Section 364 and that, as such, the estate's decision to recommit the remaining pre-petition retainer as a new post-petition retainer for future services to be rendered on behalf of the estate had to pass muster under Section 364(c)(2):

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt—
>
> * * *
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or

11 U.S.C. § 364(c)(2).

---

**6.** This case presents a relatively unique situation in that the retainer in question is a carry-over from the Debtor's pre-petition relationship with its attorney. However, the principle is the same with respect to all post-petition retainer agreements. For example, a trustee or debtor-in-possession who intends to secure the employment of a new attorney or other professional with a retainer must have the appropriate authority to offer the retainer before the bankruptcy estate's assets can be so committed.

However, there is nothing in the record[7] that Seek Wilderness, as debtor-in-possession, filed a motion or otherwise offered proofs that a retainer agreement was necessary in order to secure proper legal services for the estate or that Seek Wilderness notified its 20 largest creditors of its intentions so that those creditors might have had an opportunity to object. *See,* FED.R.BANKR.P. 4001(c).[8]

If, on the other hand, the bankruptcy estate's post-petition arrangement with Mr. Bays was not a credit transaction, the use of the estate's property to secure payment of Mr. Bays' fees would still have required authorization under Section 363. Section 363(b) does permit a debtor-in-possession to use property of the estate after notice and a hearing. However, there is no indication in the record that Seek Wilderness requested such authority from the court or that the creditor matrix was otherwise apprized of its intentions as required by FED.R.BANKR.P.2002(a)(2).[9]

Nevertheless, Section 363(c) may offer an excuse for the absence of an authorizing order since that section permits a trustee or debtor-in-possession to use property of the estate without such an order provided the use is in the ordinary course of the debtor's business. Indeed, Mr. Bays indicated at the August 29, 2006 hearing that he in fact intended to rely upon Section 363(c) as the statutory basis for enforcing his claim to the remaining $2,700 held in his account.

Suffice to say at this point that Mr. Bays will need to adequately address the Section 327, 363, and 364 authority issues I have raised in order to ultimately prevail over Trustee with respect to what remained of his retainer as of the commencement of the Chapter 11 proceeding. If he cannot, then Mr. Bays is not entitled to now apply any of the $2,700 retainer that remained for the simple reason that the purported retainer arrangement is unenforceable. It also follows that at some point in time Mr. Bays will have to account to the bankruptcy estate for this remaining amount if he is unable to establish the estate's authority for giving it to him as a retainer. However, Trustee would need to commence a Section 542 action in order to compel such an accounting and Trustee does not request such relief at this time. Trustee, of course, reserves the right at a later date to seek leave to amend her complaint to include this additional relief.

Apparently, these authority issues were not considered by the Sixth Circuit in *Specker Motor* either. Mr. Bays, who, by

---

**7.** The bankruptcy judges in this district assume responsibility for cases assigned to its Upper Peninsula docket on a rotating basis. Consequently, I did not become the presiding judge in the Seek Wilderness bankruptcy proceeding until I replaced my colleague on that assignment in January of 2005. By that point in time, Seek Wilderness' Chapter 11 proceeding had already been converted to Chapter 7. Therefore, my understanding of what transpired during Seek Wilderness' Chapter 11 proceeding is based upon this court's records as supplemented by whatever the parties themselves have subsequently offered by way of argument or explanation.

**8.** Notice to Seek Wilderness' 20 largest creditors was necessary because no Section 1102

creditors' committee was ever appointed in this case.

**9.** That Rule reads, in relevant part:

(a) **Twenty-day Notices to Parties in Interest.** Except as provided in subdivisions (h), (i), and (*l*) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 20 days' notice by mail of:

\* \* \*

(2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice.

FED.R.BANKR.P.2002(a)(2) (Pre–BAPCPA).

coincidence, also represented the bankruptcy estate in *Specker Motor,* had received a $10,000 retainer in connection with that representation. Thereafter, the Sixth Circuit affirmed the lower court's order directing Mr. Bays to disgorge most of that retainer so as to equalize the distribution between what Mr. Bays received as payment for his employment and what other unpaid Chapter 11 administrative claimants were to receive.

The Sixth Circuit, in reaching that conclusion, had to have assumed that the $10,000 post-petition retainer originally paid Mr. Bays was properly authorized under Section 327(a), 363, and/or 364. Otherwise, it would not have had to rely upon Section 726(b) to compel disgorgement. Rather, it could have simply determined that the post-petition retainer paid was unauthorized and, therefore, subject to return *in toto.*

However, if the Sixth Circuit did, as it in fact appears, treat the post-petition retainer as being properly authorized, then there is yet another reason for further evaluating that decision. Again, *Specker Motor* is based upon the premise that a professional employed by the bankruptcy estate must share equally with other unpaid Chapter 11 administrative creditors so as to meet the strictures of Section 726(b). However, as already discussed, that reasoning applies only if the professional's claim for post-petition fees is unsecured, for Section 726(b) by definition applies only to unsecured priority claims, be they administrative or otherwise. *See also, In re Talbert,* 268 B.R. 811 (Bankr.W.D.Mich.2001). Therefore, if, as it seems the Sixth Circuit

concluded, the bankruptcy estate in *Specker Motor* had granted Mr. Bays a valid retainer to secure the post-petition services he would be rendering on its behalf, then it stands to reason that the subsequent Chapter 7 trustee in that case was in turn obligated to account to Mr. Bays with respect to the security interest created without consideration to what unsecured Chapter 11 administrative claimants might or might not be paid under Section 726.[10]

In fact, the outcome for Mr. Bays in *Specker Motor* should have been no different than what would have been the outcome had the Chapter 11 bankruptcy estate in that case instead paid a plumber an authorized deposit to secure the payment of post-petition services to be rendered for the benefit of the estate. The temptation, of course, is to distinguish a plumber who has received a post-petition deposit from an attorney who has received a post-petition retainer on the basis that a plumber provides his or her services in the ordinary course whereas an attorney's services are always subject to review and disgorgement because of their interim nature. *Specker Motor,* 393 F.3d at 662–3. However, if this distinction has any merit,[11] it is only in those instances where the post-petition creditor's claim is unsecured, for *Specker Motor* is quite clear that the court's authority for compelling the attorney to disgorge previous payments received derives from Section 726(b) and Section 726(b) applies only to the equalization of unsecured Chapter 11 administrative claims. A post-petition creditor who was savvy enough to

---

**10.** Granted, the *Specker Motor* trustee could have still challenged Mr. Bays' fees as unreasonable under Section 330(a). However, the reasonableness of Mr. Bays' fees in *Specker Motor* was not an issue. Rather, the only question the Sixth Circuit addressed in *Specker Motor* was whether it was fair for Mr. Bays to keep all of the retainer he held as security

to cover his unpaid post-petition fees in light of the fact that there were also other Chapter 11 administrative claimants who remained unpaid.

**11.** *See, In re St. Joseph Cleaners, Inc.,* 346 B.R. 430, 432–39 (Bankr.W.D.Mich.2006).

have secured its claim against the estate with a deposit/retainer is immune to Section 726(b) because its secured status elevated it to a higher priority than that afforded to those administrative creditors who chose to offer their services to the estate on only an unsecured basis.

If there is any doubt, consider Section 364(c). That section permits a Chapter 11 trustee or debtor-in-possession under the appropriate circumstances to procure post-petition credit with the promise of either "super-priority" over other unsecured administrative claimants or an actual lien in the estate's property. Assume, for example, that a Chapter 11 debtor-in-possession did file a Section 364 motion to employ an attorney in exchange for a substantial retainer to secure future payment and that the court approved that motion after making the requisite findings under Section 364(c). A subsequent Chapter 7 trustee could certainly still challenge the reasonableness of the fees incurred by that attorney provided a final award had not yet been made under Section 330(a). However, a subsequent Chapter 7 trustee could no more treat the attorney as just another unpaid and unsecured Chapter 11 administrative claimant under Section 726(a) or (b) than could a subsequent Chapter 7 trustee treat a post-petition lender who had received a security interest under Section 364(c) as just another unsecured administrative claimant.

■ Nonetheless, the holding in *Specker Motor* seems to be that Section 726(b) requires disgorgement by the professional even if the post-petition fees are secured by a valid post-petition retainer and I am bound to adhere to that ruling. Therefore, if Mr. Bays in this instance is able to successfully address the various authority issues I have raised regarding the post-petition retainer he claims, *Specker Motor* would still require him to return at least some portion of the remaining $2,700 he

had kept as his post-petition retainer so as to equalize the distribution under Section 726(b).

Although not altogether clear, the dispute regarding the amount Mr. Bays must return appears to be this: Should what Mr. Bays is required to disgorge be calculated based upon only the currently unpaid Chapter 11 administrative claims and Mr. Bays' gross fees as the denominator, or should the denominator also include all of the other paid administrative expenses that the Chapter 11 bankruptcy estate had incurred during its fifteen months of post-petition operations?

■ It is Trustee's contention that the disgorgement should be based upon only the remaining unpaid administrative expenses. For example, in this instance, Trustee asserts that the unpaid Chapter 11 administrative claims, apart from Mr. Bays' fees, total $71,174.79 and that, therefore, the denominator for calculating the distribution to Chapter 11 administrative claimants pursuant to Section 726(b) is $80,375.06 (*i.e.,* the $71,174.79 plus the $9,200.27 in total fees and expenses claimed by Mr. Bays). $80,375.06, however, overstates the denominator because it includes $4,800 for Mr. Bays's pre-petition services, and, as already discussed, these pre-petition fees are not Chapter 11 administrative expenses. Therefore, the denominator which Trustee advocates should, in fact, be $75,575.06 (*i.e.,* $80,375.06 minus $4,800).

Trustee would then add the remaining $2,700 of the retainer to what she claims is otherwise currently available to distribute to Chapter 11 administrative claimants (*i.e.,* $4,509.15) to arrive at the numerator. The resulting fraction of $6,209.15 over $75,575.06 reduces to a rounded percentage of 8.22%.

Mr. Bays' post-petition fees and expenses total $4,400.27. Therefore, accord-

ing to Trustee, Mr. Bays should have received $361.70 (8.22% of $4,400.27) had he not kept the remaining $2,700 as a post-petition retainer. Consequently, it is Trustee's position that Mr. Bays should have to disgorge $2,338.30, which is the difference between $361.70 and the $2,700 retainer.

■ On the other hand, Mr. Bays contends that all distributions made to Chapter 11 administrative claimants should be added to the denominator. For example, if, during the course of the Chapter 11 proceeding, Seek Wilderness, as debtor-in-possession, had paid $50,000 to various post-petition trade creditors, then the denominator according to Mr. Bays should be $125,575.06 (*i.e.*, $75,575.06 plus $50,000) and the numerator should be $56,209.15 (*i.e.*, $6,209.15 plus $50,000). The resulting percentage from this fraction would be 44.76% as opposed to the meager 8.22% advocated by Trustee. Consequently, according to Mr. Bays, he would have received a Chapter 11 distribution of $1,969.56 (44.76% of $125,575.06), even had he not received the post-petition retainer. Therefore, Mr. Bays contends that he should have to return only $730.44, which is the difference between $1,969.56 and the $2,700 retainer.

In more abstract terms, the dispute between Trustee and Mr. Bays is about how one measures equality under *Specker Motor*. Trustee contends that the equality dictated by *Specker Motor* is only with respect to those Chapter 11 administrative claimants who remain unpaid as of the final Section 726(b) distribution, whereas Mr. Bays contends that the equality dictated by *Specker Motor* must be based upon all administrative claimants, whether paid or unpaid.

There is at first blush a certain appeal to Mr. Bays' position, for *Specker Motor* does include language to the effect that all equally situated creditors should share equally.

Equality of distribution among creditors is the central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive *pro rata* shares of the debtor's property. Equality of distribution would be vitiated if one equally situated administrative claimant—Bays—received more than his *pro rata* share. It is understandable that this conclusion dismays Bays. He ably provided his services, and now, through no fault of his own, is denied all but a sliver of compensation. But his position is no different from that of anyone who provides services or credit to a bankrupt firm. Indeed, as an administrative claimant, his position is better than most. As the district court stated, "counsel is a gambler in [bankruptcy] proceedings like any other administrative creditor."

*Specker Motor*, 393 F.3d. at 664.

However, as appealing as this argument may be, it is ultimately not persuasive. First, there is no indication that the Sixth Circuit in *Specker Motor* would have entertained the argument Mr. Bays is making now had he made it then. *Specker Motor* had operated in a Chapter 11 proceeding for approximately six months before the case was converted to Chapter 7. Consequently, it is fair to assume that a sizeable amount of Chapter 11 administrative expenses were paid during this interval as the debtor-in-possession in that proceeding met its payroll and otherwise paid for its operations. However, there is no indication in *Specker Motor* that any of these already-paid administrative expenses were to be added to the calculus to determine how much of Mr. Bays' retainer had to be disgorged. To the contrary, it appears that the Sixth Circuit was content with the reallocation that the bankruptcy

court had ordered, albeit that reallocation placed Mr. Bays on an equal footing with only the four remaining Chapter 11 administrative claimants who had yet to be paid at the conclusion of the Chapter 7 case.

Second, the formula advocated by Mr. Bays would not result in the equality of distribution supposedly mandated by *Specker Motor.* Those who had already been paid on account of their Chapter 11 administrative claims would still keep all that they had received. Indeed, the only difference between Mr. Bays' approach and the approach taken in *Specker Motor* and now advocated by Trustee in this instance is that Mr. Bays would have the other remaining unpaid Chapter 11 administrative claimants shoulder more of the bankruptcy estate's secondary insolvency than would be the case if Trustee's approach were used. Of course, Mr. Bays' solution would make more sense if, in fact, the bankruptcy estate also had the authority to compel all recipients of a Chapter 11 administrative expense payment to disgorge a sufficient amount to insure an equal distribution among all Chapter 11 administrative claimants. However, as I explained in *St. Joseph Cleaners,* Section 549 precludes the recovery of administrative payments made in the ordinary course. *In re St. Joseph Cleaners, Inc.,* 346 B.R. 430, 435 (Bankr.W.D.Mich.2006).

Therefore, the equity among Chapter 11 administrative claimants that the Sixth Circuit may have envisioned in *Specker Motor* and that Mr. Bays now insists upon in this case is impossible as soon as a Chapter 11 debtor-in-possession pays its first post-petition bill. Consequently, I see no point in dwelling upon an equality that Mr. Bays himself agrees is unattainable as a basis for establishing the formula to be used for calculating the so-called *Specker Motor* disgorgement in this instance.

Finally, refusing to adopt Mr. Bays' approach otherwise squares with *Specker Motor.* Granted, *Specker Motor* includes some pretty sweeping pronouncements. However, the ultimate question in *Specker Motor* was whether a professional employed by the estate should be included among the administrative claimants entitled to a distribution under Section 726 even though the bankruptcy estate had already paid that professional. *Specker Motor*'s answer to that question was yes, based upon the determination that what is awarded to a professional employed by the bankruptcy estate is by its very nature interim.

Consequently, the Sixth Circuit had no qualm at all about combining Chapter 11 professional fees, both paid and unpaid, with all remaining unpaid Chapter 11 administrative expenses for purposes of calculating the Section 726 distribution to these claimants. Likewise, the Sixth Circuit had no qualm with compelling a professional to then disgorge a sufficient amount from whatever he or she had previously been paid by the estate so as to ensure that the professional's Section 726 distribution was no greater *in toto* than what the other remaining unpaid Chapter 11 administrative claimants entitled to a Section 726 distribution would receive.

## CONCLUSION

Trustee's motion for summary judgment requests that, as a matter of law, I compel Mr. Bays to return to the bankruptcy estate a portion of the $7,500 retainer he was paid pre-petition based upon a calculation of what Mr. Bays would have received had the fees that are set forth in his pending application been treated as if they were unpaid Chapter 11 administrative expenses (*i.e.,* as if Mr. Bays had never received the $7,500 retainer paid to him). Trustee seeks this declaration based upon Section

726(d) and the Sixth Circuit's decision in *Specker Motor.*

No further proceeding is required with respect to Trustee's requested disgorgement of the retainer related to Mr. Bays' pre-petition representation of Seek Wilderness. Mr. Bays is entitled to retain that amount notwithstanding Trustee's demand for disgorgement. However, further proceedings will be required to determine whether Mr. Bays must disgorge all or some portion of the retainer that remained at the time Seek Wilderness filed its Chapter 11 petition. Nonetheless, my rulings regarding that remaining $2,700 retainer will be binding with respect to those proceedings. These rulings are:

1. It is inappropriate to include within the denominator of the fraction Trustee wishes to use for purposes of determining what, if anything, Mr. Bays must disgorge the $4,800 in fees that represent Mr. Bays' pre-petition services. The denominator to be used is limited to only Chapter 11 administrative expenses and Mr. Bays' pre-petition services were not entitled to priority, administrative or otherwise. Rather, Mr. Bays would have had only an unsecured, non-priority claim for these services had he not received the pre-petition retainer.

2. It is also inappropriate to include in the numerator of the fraction to be used any portion of the retainer paid Mr. Bays that is attributable to his pre-petition fees (*i.e.,* $4,800) because that amount in effect stands as security for the payment of those fees. Consequently, the ensuing bankruptcy estate has no right to recover this portion of the retainer unless it can establish that the pre-petition portion of the retainer is either avoidable under the Bankruptcy Code or unenforceable under applicable non-bankruptcy law.[12]

3. Mr. Bays must return all of the $2,700 that remained of the pre-petition retainer at the outset of the Chapter 11 case unless Mr. Bays can establish that the bankruptcy estate was properly authorized to permit Mr. Bays to keep that amount as a new retainer for services that he would then be providing to the estate. Whether the bankruptcy estate had the authority or not to give a post-petition retainer to Mr. Bays remains an open question that must be resolved at trial. Both parties will be required to include this issue in their trial briefs. At this point, it appears that the arguments Mr. Bays intends to make are that Seek Wilderness' pre-petition arrangement concerning the retainer was sufficient to bind the estate with respect to the post-petition services rendered by Mr. Bays on behalf of the ensuing bankruptcy estate and that the post-petition retainer of $2,700 was otherwise authorized as an ordinary course transaction under Section 363(c).

4. Even if Mr. Bays is able to establish that the $2,700 post-petition retainer was properly authorized, *Specker Motor* still requires that Mr. Bays return at least some portion of the post-petition retainer for re-distribution pursuant to Section 726(b). As for the fraction to be used in making this calculation, the denominator will include all of Mr. Bays' claimed post-petition fees and expenses (*i.e.,* $4,400.27) and the numerator will include the remaining $2,700 Mr. Bays

---

**12.** As already discussed, Trustee did speculate at the hearing that the retainer might not be enforceable under Michigan law without debtor's consent. Trustee may, if she chooses, file a motion to amend her complaint to include this alternative theory for recovering the pre-petition portion of the retainer. If an amendment is not made, then Trustee will simply reserve this theory as well as all other theories she might have for a possible future lawsuit against Mr. Bays subject, of course, to Mr. Bays' reserving all defenses he may have.

kept as his post-petition retainer. However, the denominator and numerator will include other Chapter 11 administrative claims only to the extent they have not been paid at this time. In other words, neither the denominator nor the numerator will include, as Mr. Bays has urged, Chapter 11 administrative expenses that Seek Wilderness, as debtor-in-possession, had already paid during the course of its Chapter 11 operations.

Again, each of these four rulings will be binding with respect to the further administration of this adversary proceeding. However, I also recognize that certain rulings that I have made are based upon issues identified by me in disposing of Trustee's motion for summary judgment, and, therefore, the parties were not necessarily prepared to fully address these issues at the August 29, 2006 hearing. Therefore, either party may include with that party's trial brief any additional argument or authority he or she thinks is pertinent to one or more of these rulings for purposes of modifying them prior to the final disposition of this adversary proceeding. An order will enter consistent with this opinion.

I also heard on August 29 Mr. Bays' application for fees and Trustee's objection thereto. Again, Trustee does not dispute the reasonableness of the fees requested; rather, Trustee simply contests the allowance of these fees if the allowance would mean that Mr. Bays could keep more of the retainer than he otherwise could keep under *Specker Motor.* Frankly, I interpret Trustee's objection more as an exercise of overabundant caution than a legitimate objection to the fees requested. Suffice it to say that I am allowing the fees, albeit allowance of the pre-petition fees incurred is actually not necessary since Trustee never in fact filed a Section 329 motion to disallow all or a portion of Mr. Bays' pre-petition fees as unreasonable or excessive. However, allowance of the fees Mr. Bays has requested is without prejudice to whatever continuing rights Trustee might have under *Specker Motor* or otherwise to disgorge the retainer held by Mr. Bays to cover payment of these fees. A separate order will also enter consistent with this determination.